## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, for the use and benefit of MOUNTAIN UTILITIES, INC., a Washington corporation,<br><br>     Plaintiff,<br><br>     v.<br><br>FIDELITY AND DEPOSIT COMPANY OF MARYLAND, an Illinois corporation; ZURICH AMERICAN INSURANCE COMPANY, a New York corporation; AMERICAN HOME ASSURANCE COMPANY, a New York corporation; WOOD ENVIRONMENT & INFRASTRUCTURE SOLUTIONS, INC., a Nevada corporation; AMEC FOSTER WHEELER ENVIRONMENT & INFRASTRUCTURE, INC., a Nevada corporation; ANDERSON ENVIRONMENTAL CONTRACTING, LLC, a Washington limited liability company,<br><br>     Defendants. | Case No. 2:19-cv-00293-RCT<br><br>**MEMORANDUM DECISION AND ORDER** |

ANDERSON ENVIRONMENTAL
CONTRACTING, LLC, a Washington
limited liability company

      Cross Claimant,

      v.

AMERICAN HOME ASSURANCE
COMPANY, a New York corporation;
FIDELITY AND DEPOSIT COMPANY
OF MARYLAND, an Illinois
corporation; WOOD ENVIRONMENT
& INFRASTRUCTURE SOLUTIONS,
INC., a Nevada corporation; ZURICH
AMERICAN INSURANCE COMPANY,
a New York corporation,

      Cross Defendants.

WOOD ENVIRONMENT &
INFRASTRUCTURE SOLUTIONS,
INC., a Nevada corporation; AMEC
FOSTER WHEELER ENVIRONMENT
& INFRASTRUCTURE, INC., a Nevada
corporation,

      Cross Claimants,

      v.

ANDERSON ENVIRONMENTAL
CONTRACTING, LLC, a Washington
limited liability company,

      Cross Defendant.

WOOD ENVIRONMENT &
INFRASTRUCTURE SOLUTIONS,
INC., a Nevada corporation,

     Third Party Plaintiff,

     v.

TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA,

     Third Party Defendant.

## INTRODUCTION

Before the Court are numerous pre-trial motions filed by the parties, including motions in limine, Rule 702 motions, and a motion for Rule 37 sanctions.  (Dkts. 82–85, 87, 88, 90, 96, 100, 107–10, 112–17, 132).  The Court has carefully reviewed the pending motions and issues this Order to explain the tentative rulings announced orally from the bench at the Pre-Trial Conference on March 28, 2022.  Some of the Court's rulings herein are subject to modification and/or reconsideration where expressly indicated, and will be influenced based on how the trial actually proceeds and the testimony and evidence admitted by the Court to better establish context to inform mid-trial rulings.

The motions are fully briefed and at issue.  Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record.  Accordingly, in the interest of avoiding further delay, and

because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the motions shall be decided on the record before this Court without oral argument.

## BACKGROUND

A two-week trial in this matter is set for July 5, 2022.  This case arises from the construction of the Central Treatment Plant Upgrade and Ground Water Collection System at the Bunker Hill Superfund Site in Kellogg, Idaho ("Project"). The plant treats groundwater contaminated by the tailings of more than a century of underground mining activities in North Idaho's Silver Valley mining area.

Wood Environment & Infrastructure Solutions, Inc., through its predecessor in interest AMEC Foster Wheeler Environment & Infrastructure, Inc., entered a contract with the United States Government to perform certain specified work on the Project.  In accordance with the Miller Act, Wood as principle or general contractor, through its predecessor AMEC, executed a $48 million payment and performance bond ("Wood Bond"), issued by corporate sureties Fidelity and Deposit Company of Maryland, Zurich American Insurance Company, and American Home Assurance Company (together "Wood Sureties").

Wood later entered a contract ("Subcontract") with Anderson Environmental Contracting, LLC ("AEC") to provide certain labor, materials, and equipment for the Project.  AEC as principal also executed a payment and performance bond

("AEC Bond") with Travelers Casualty and Surety Company of America as surety. AEC then entered a contact ("Sub-Subcontract") with Mountain Utilities, Inc. to perform certain piping installation and pipe fusion services for the Project.

Plaintiff Mountain Utilities brought this action on July 26, 2020, against Wood and the Wood Sureties for violation of the Miller Act, and against AEC for breach of contract, alleging that it has not been paid for work it performed under the Sub-Subcontract. AEC cross-claimed against Wood for breach of contract, and against Wood and the Wood Sureties for violation of the Miller Act, alleging that Wood unlawfully terminated the Subcontract, interfered with AEC's performance, and failed to pay AEC for work that it had performed under the Subcontract. Wood also cross-claimed against AEC for breach of contract and against AEC and Travelers for breach of the AEC Bond, alleging that AEC failed to perform in accordance with the Subcontract and, upon default, Travelers failed to step in and complete AEC's remaining scope of work.

The parties now move to exclude certain evidence and expert witnesses from testifying at trial, and AEC and Travelers seek Rule 37 sanctions against Wood for alleged discovery violations resulting from relevant documents not being produced until months after discovery had closed.

## ANALYSIS

### I.    Motions in Limine

### A. Legal Standard

Motions in limine are beneficial tools that promote judicial efficiency by presenting the Court with an opportunity "to rule in advance of trial on the relevance of certain forecasted evidence . . . without lengthy argument at, or interruption of, the trial." *D.A. v. Meridian Joint Sch. Dist. No. 2*, 2013 WL 12147769, at *2 (D. Idaho June 14, 2013) (unpublished) (quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)). The key function of a motion in limine is "to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). A ruling on a motion in limine is essentially a preliminary ruling, which may be reconsidered in the context of trial. *Id.* at 41–42. But because these pretrial evidentiary rulings are made before the court has seen or heard the challenged evidence, and because they restrict a party's presentation of their case, "courts have recognized that motions in limine should be granted sparingly and only in 'those instances when the evidence plainly is inadmissible on all potential grounds.'" *D.A.*, 2013 WL 12147769, at *2 (quoting *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007)).

**B. Mountain Utilities' Motion in Limine**

Mountain Utilities moves the Court to exclude all evidence and argument indicating that it is prevented from seeking damages under the Miller Act based on certain contractual defenses.  (Dkt. 100).  Mountain Utilities argues that exclusion of this evidence is necessary because the remedial nature of the Miller Act means that the Act trumps contract terms or conditions which purport to limit or waive a claimant's right to recover under the Act.  (Dkt. 100-1, at 3–4).

As a preliminary matter, Mountain Utilities never brought a Miller Act claim against AEC and, therefore, the Court denies this motion in part as to AEC and Travelers.  (Dkt. 100).

As to Wood and the Wood Sureties, the Court will preclude these parties from offering evidence or argument regarding the Sub-Subcontract's pay-if-paid provision.  The Ninth Circuit has held that a pay-if-paid clause in a contract does not relieve a contractor or surety from liability under the Miller Act.  *See United States ex rel. Walton Tech., Inc. v. Weststar Eng'g, Inc.*, 290 F.3d 1199, 1209 (9th Cir. 2002) ("A subcontractor that has performed as agreed need not await the Government's payment of the contractor before initiating an action under the Miller Act against the contractor or the surety.").  Accordingly, the pay-if-paid provision in the Sub-Subcontract has no relevance to Wood and the Wood

Sureties' liability under the Miller Act.  This motion is therefore granted in part. (Dkt. 100).

Other contract defenses, however, are not so clearly precluded by the Miller Act.  For example, to determine whether the Miller Act trumps written change order requirements, the Court must determine whether the specific "change order request, or some portion thereof, reflects costs of work that is within the scope of the Miller Act."  *See HPS Mech., Inc v. JMR Constr. Corp.*, 2013 WL 5954895, at *7 (N.D. Cal. Nov. 6, 2013) (unpublished).  "In all events, determination of this issue requires a change order by change order analysis." *Id.* at *8.  The same is true for contractual notice of claim requirements, which also require an individualized inquiry into whether the notice of claim reflects costs of work within the scope of the Miller Act.  *Id.*  Because "a motion in limine should not be used to resolve factual disputes or weigh evidence," *United States v. Moffit*, 2022 WL 656904, at *1 (D. Idaho Mar. 2, 2022) (citing *C&E Servs., Inc., v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008)), the Court denies the motion in part as to the written change order and notice of claim clauses in the Sub-Subcontract. (Dkt. 100).  This denial is without prejudice to raising the issue again at trial in response to specific evidence and argument, if appropriate.

Moreover, whether a no-damage-for-delay clause is trumped by the Miller Act appears to be an unsettled legal question.  *Compare United States ex rel.*

*Kitchens To Go v. John C. Grimberg Co.*, 283 F. Supp. 3d 476, 481–85 (E.D. Va. 2017) (holding that a no-damages-for-delay clause affected the right to recovery and was precluded by the Miller Act), *with Morganti Nat'l, Inc. v. Petri Mech. Co.*, 2004 WL 1091743, at *11 (D. Conn. May 13, 2004) (unpublished) (holding that a no-damages-for-delay clause affected only the measure of recovery and was not precluded by the Miller Act). "'[M]otions in limine are not to be used as a sweeping means of testing issues of law.'" *Nat. Res. Def. Council v. Rodgers*, 2005 WL 1388671, at *1 n.2 (E.D. Cal. June 9, 2005) (unpublished) (quoting *Provident Life & Accident Ins. Co. v. Adie*, 176 F.R.D. 246, 250 (D. Mich. 1997)). For this reason, the Court declines to resolve the issue at this time.  (Dkt. 100).

Finally, Mountain Utilities fails to explain why other hypothetical contract defenses would be irrelevant to its Miller Act claims, or unduly prejudicial. *See D.A.*, 2013 WL 12147769, at *2 ("Where a party fails to pinpoint the challenged evidence, or the grounds on which it should be excluded, the motion in limine will be denied.").  Mountain Utilities may object to evidence and argument regarding other potential contract defenses at trial should circumstances justify such an objection.  (Dkt. 100).

### C. AEC and Travelers' Motions in Limine

#### 1. AEC and Travelers' Joint Motion to Preclude Evidence Regarding Subcontract and Bond

AEC and Travelers move the Court to preclude Wood from introducing evidence or argument regarding the Subcontract and AEC Bond.  (Dkt. 96).  AEC and Travelers argue that this evidence should be excluded because Wood knew that AEC had substantially underbid for its work on the Project, and Wood's knowledge of that fact amounted to a material misrepresentation that rendered the Subcontract unenforceable and the corresponding bond null and void.  (Dkt. 96-1, at 1–2).  But even if AEC has a colorable unilateral mistake claim, a motion in limine "is not a proper vehicle for a party to ask the Court to weigh the sufficiency of the evidence to support a particular claim or defense." *Elliott v. Versa CIC, L.P.*, 349 F. Supp. 3d 1000, 1002 (S.D. Cal. 2018) (quoting *Bowers v. Nat'l Collegiate Athletic Ass'n*, 563 F. Supp. 2d 508, 532 (D.N.J. 2008).  This motion is denied.  (Dkt. 96).

#### 2. AEC and Travelers' Joint Omnibus Motion to Preclude Evidence

AEC and Travelers filed a joint omnibus motion with sub-motions.  (Dkt. 107).  The Court will address each part of that motion in turn.

Motion No. 1.  AEC and Travelers move the Court to preclude Wood's expert from testifying to any fact or opinion not addressed in its expert reports.  (Dkt. 107-1, at 3).  Under Federal Rule of Civil Procedure 26(a)(2)(B), a court has

discretion to preclude an expert from testifying on an issue not disclosed in his or her report, *see Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1062 (9th Cir. 2008), and Wood does not object to any expert in this case generally being limited to their respective reports. (Dkt. 165). The Court therefore will exercise its discretion and restrict the testimony of Wood's expert witnesses to the scope of the opinions set forth in their respective reports. (Dkt. 107).

That said, however, Wood produced 76,757 documents in this case on September 2, 2021 (hereinafter "Production 9"), three months after the close of discovery and in blatant violation of this Court's November 9, 2020, Amended Scheduling Order (Dkt. 56) setting a deadline of April 15, 2021, for completion of fact discovery. Many of these documents were highly relevant to key issues in this case. But because these documents were produced three months after the close of discovery, after all depositions had been taken, and after expert reports had been prepared, neither AEC nor Travelers' experts were able to rely on Production 9 documents when reaching the opinions set forth in their respective reports. AEC also notes that Wood's expert may have had access to Production 9 documents in formulating its opinions. (Dkt. 181). In fairness then, the Court will allow only AEC and Travelers' experts to testify to facts or opinions not addressed in their expert reports, but if and only if those facts or opinions originate directly from

information contained in a Production 9 document or from evidence adduced at trial. *See infra*, Part III (AEC and Travelers' motion for Rule 37 sanctions).

Motion No. 2. AEC and Travelers move the Court to preclude evidence regarding the pay-if-paid provision of the Subcontract as a defense to payment for the work on AEC's Miller Act claims. (Dkt. 107-1 at 4). As discussed above, the Ninth Circuit has held that a pay-if-paid clause in a contract does not relieve a surety from liability under the Miller Act. *See Weststar Eng'g, Inc.*, 290 F.3d at 1206. Accordingly, the pay-if-paid provision in the Subcontract has no relevance to Wood and the Wood Sureties' liability under the Miller Act. The provision can be used, however, as a defense to AEC's breach of contract claim. This motion is therefore granted in part as to AEC's Miller Act claim, but denied in part as to AEC's breach of contract claim. (Dkt. 107).[1]

Motion No. 3. AEC and Travelers move the Court to preclude evidence regarding Wood's use of cured defaults as the basis for termination of the Subcontract. (Dkt. 107-1, at 5). Although "a non-breaching party who chooses to continue to perform the contract can never thereafter renounce its election to continue and seek to terminate the contract based on the prior breach," *AES New*

---

[1] The Court declines to decide at this time whether the payment terms were modified by AEC's Assumptions and Exclusions or Change Orders, since this is not an appropriate issue for a motion in limine. *See Elliott*, 349 F. Supp. 3d at 1002. AEC may raise this issue again at trial, if appropriate.

*Creek, LLC. v. Exergy Dev. Grp. of Idaho, LLC*, 2014 WL 12597906, at *6 (D. Idaho Aug. 18, 2014) (unpublished) (quoting *Times Mirror Mags., Inc. v. Field & Stream Licenses Co.*, 103 F. Supp. 2d 711, 737 (S.D.N.Y. 2000)), it is an issue of disputed fact in this case as to whether AEC "cured" any alleged prior breaches of the Subcontract.  Moreover, it is an issue of disputed fact as to whether AEC subsequently re-breached the contract after Wood allegedly elected to continue performance.  Because a motion in limine is not a proper vehicle for a party to ask the Court to weigh the sufficiency of the evidence to support a particular claim or defense, *Elliott*, 349 F. Supp. 3d at 1002, this motion is denied.  (Dkt. 107).

Motion No. 4.  AEC and Travelers move the Court to preclude Wood from admitting any documents Wood failed to include in its initial disclosure or to produce prior to the discovery cutoff.  (Dkt. 107-1, at 9).  This motion is redundant with AEC and Travelers' motion for Rule 37 sanctions (Dkt. 90) discussed below. *See infra*, Part III.  This motion is therefore denied as moot.  (Dkt. 107).

Motion No. 5.  AEC and Travelers move the Court to exclude all witnesses except a designated party representative from the courtroom prior to testifying, and to preclude counsel from informing witnesses about testimony that occurred before they testify.  (Dkt. 107-1, at 10).  The Court grants this motion in part (Dkt. 107), and all fact witnesses will be sequestered except for one corporate representative per party.  Fed. R. Evid. 615.  Counsel will also be precluded from informing

witnesses about testimony that occurred before they testify.  The Court will not order expert witnesses sequestered, however, since expert witnesses are permitted to base their opinions on the facts and data of which they are made aware at trial. Fed. R. Evid. 703.

> **3. AEC and Travelers' Joint Motion to Preclude Wood from Offering Testimony Contradicting Prior Testimony from its Rule 30(b)(6) Depositions**

AEC and Travelers move the Court to hold Wood's corporate designees to the answers they gave at their Rule 30(b)(6) depositions, and to preclude Wood from offering testimony that contradicts or otherwise supplements the deposition testimony given by its designees.  (Dkt. 112).  AEC and Travelers argue that this motion is justified because Wood's witnesses were unprepared and unable to answer direct questions on critical issues during their Rule 30(b)(6) depositions. (Dkt. 112-1, at 1).

Although the testimony of a corporate representative is admissible against the corporation pursuant to Fed. R. Evid. 801(d)(2)(C), it is not binding such that the corporation cannot offer additional or contradictory testimony at trial.  *See Snapp v. United Transp. Union*, 889 F.3d 1088, 1104 (9th Cir. 2018).  Moreover, even if Wood's witnesses were completely unprepared and unable to answer questions on critical issues, this would be a discovery violation that should have been raised during the discovery process by a motion to compel.  *See R.W. Int'l*

*Corp. v. Welch Foods, Inc*., 937 F.2d 11, 18 (1st Cir. 1991) (noting that Federal Rule of Civil Procedure 37 "sets forth a clear path to be followed if a party believes that another litigant is not cooperating in the discovery process").  But AEC never raised this issue during the discovery process, and instead chose to "lay in wait until the eve of trial before filing its motion in limine."  *JOM, Inc. v. Adell Plastics, Inc.*, 193 F.3d 47, 50 (1st Cir. 1999).  This motion is therefore denied. (Dkt. 112).

### 4.  Travelers' Motion to Exclude Evidence of Damages in Excess of Penal Sum of Bond

Travelers moves the Court to preclude Wood from introducing any evidence or argument regarding any damages or responsibility for amounts in excess of the penal sum of the AEC Bond.  (Dkt. 108).  Specifically, Travelers argues that its obligations are limited to the four corners of the bond, and its liability is strictly limited to the penal amount.  (Dkt. 108, at 2).

Although "[i]t is fundamental in the law of suretyship that a bondsman cannot be held for any default of his principal in an amount greater than the penal sum of the bond," *Mass. Bonding & Ins. Co. v. United States*, 97 F.2d 879, 881 (9th Cir. 1938), Wood's claims in this action are not limited to its claim against Travelers for breach of the AEC Bond.  Wood also asserts a claim for breach of contract against AEC, and the Subcontract places no cap on AEC's liability.  Also, Wood may hypothetically be entitled to recover amounts from Travelers in excess

of the penal sum of the bond.  *See, e.g.*, *id.* ("Interest in excess of this amount may become due from the surety, but only upon the surety's own default . . . ."). Because this evidence is not plainly inadmissible on all potential grounds, *D.A.*, 2013 WL 12147769, at *2, this motion is denied.  (Dkt. 108).

### 5.  Travelers' Motion to Preclude Wood from Referring to Travelers as an Insurance Company

Travelers moves the Court to preclude Wood from referring to Travelers as an insurance company at trial.  (Dkt. 109).  Wood does not object to Travelers' Motion as long as (1) all parties are precluded from referring to Travelers as an insurance company; and (2) that all parties are similarly precluded from referring to the Wood Sureties as insurers.  (Dkt. 163, at 2).  Because Wood does not object, the Court grants this motion and orders all parties not to refer to Travelers as an insurance company.  The Court also orders all parties to not refer to the Wood Sureties as insurers.  This will have no impact on a party's right to seek attorneys' fees under Idaho Code § 41-1839, if such a right exists—that issue is preserved for resolution after a prevailing party is determined.  (Dkt. 109).

### 6.  Travelers' Motion to Preclude Argument Surety is Liable for Damages Related to Changes in Contract

Travelers moves the Court to exclude all evidence and argument regarding its liability for any damages related to changes to the Subcontract.  (Dkt. 110).  "A surety can only be held liable according to the plain and clear force of his

contract." *Miller v. Stewart*, 22 U.S. 680, 694 (1824).  When changes to the underlying contract are made, sureties are not bound to changes that they did not consent to.  *See United States ex rel. Army Athletic Ass'n v. Reliance Ins. Co.*, 799 F.2d 1382, 1385 (9th Cir. 1986) ("As a general rule a surety will be discharged where the bonded contract is materially altered or changed without the surety's knowledge or consent.").

Travelers' argument here, however, overlooks the principle that where a contract contemplates changes that can be made to the scope of work, the surety will not be discharged if there were in fact such changes ordered.  *See Mass. Bonding & Ins. Co. v. John R. Thompson Co*., 88 F.2d 825, 829 (8th Cir. 1937) ("[C]hanges which may reasonably be said to have been originally contemplated by the parties as permissible alterations—are covered by a construction contract permitting alterations, and the making of such changes does not release the surety on the ordinary performance bond.").  To be relieved of its liability under these circumstances, the surety must prove that the changes were material alterations and that it was prejudiced by the changes.  *Reliance Ins. Co.*, 799 F.2d at 1385; *Ore-Ida Potato Prods., Inc. v. United Pac. Ins. Co.*, 392 P.2d 191, 200 (Idaho 1964).

Here, Article 23 of the Subcontract between Wood and AEC states that "Wood may, at any time or from time to time, change, delete from or add to the Services in a manner that causes a material increase or decrease in the time or cost,

or both, required for Subcontractor to perform Services." (Dkt. 164-4, at 13).  This language reasonably suggests that the Subcontract contemplated that changes could be made to the scope of work.  Therefore, whether Travelers is liable for these changes to the Subcontract may depend on whether the modifications were material and whether Travelers suffered prejudice as a result.  This is a question of fact that must be presented to the trier of fact.  *See Elliott*, 349 F. Supp. 3d at 1002.  This motion is therefore denied.  (Dkt. 110).

### D. Wood and the Wood Sureties' Motions in Limine

#### 1. Wood and the Wood Sureties' Joint Motion to Exclude Evidence of Attorneys' Fees Under Miller Act Claims

Wood and the Wood Sureties move the Court to exclude all evidence and argument regarding AEC's and Mountain Utilities' claims for attorneys' fees as part of their alleged damages under the Miller Act.  (Dkt. 114).  Entitlement to attorneys' fees is to be determined in a post-trial motion by the Court, Fed. R. Civ. P. 54(d)(2), and the parties agree that they will not raise attorneys' fees before the jury.  This motion is therefore denied without prejudice to re-raise the issues at trial, if necessary.  The parties will not be precluded from filing a post-trial motion for attorneys' fees once a prevailing party is determined.  (Dkt. 114).

#### 2. Wood and the Wood Sureties' Joint Motion to Exclude Delay Damages by Mountain Utilities

Wood and the Wood Sureties move the Court to exclude all evidence and argument regarding Mountain Utilities' alleged damages for delay.  (Dkt. 115).  As

discussed above, whether a no-damage-for-delay clause is trumped by the Miller

Act appears to be an unsettled legal question, and motions in limine are not to be

used as a sweeping means of testing issues of law. *Nat. Res. Def. Council*, 2005

WL 1388671, at *1 n.2. This motion is denied. (Dkt. 115).

### 3. Wood and the Wood Sureties' Joint Motion to Exclude Evidence of Language Stricken from the Contract

Wood and the Wood Sureties move the Court to exclude all evidence and

argument regarding language that has been stricken from the Subcontract between

Wood and AEC. (Dkt. 116). While "[a] general rule of contract interpretation or

construction is that stricken language is extrinsic and may not be resorted to in

construing a contract," *G&G Mech. Constructors, Inc. v. Jeff City Indus., Inc.*, 549

S.W.3d 492, 497 (Mo. Ct. App. 2018) (simplified), "[p]arol evidence may be

considered to aid a trial court in determining the intent of the drafter of a document

if an ambiguity exists," *Steel Farms, Inc. v. Croft & Reed, Inc.*, 297 P.3d 222, 229

(Idaho 2012) (quoting *In re Estate of Kirk*, 907 P.2d 794, 801 (Idaho 1995)). The

Court believes that Paragraph 23 of the Subcontract is ambiguous and, therefore,

evidence regarding language that has been stricken from the Subcontract may be

relevant for the purpose of determining the party's intent. This motion is therefore

denied. (Dkt. 116).

### 4. Wood and the Wood Sureties' Joint Motions to Exclude Evidence of AEC's Total Cost Claim and Delay Damages

Wood and the Wood Sureties move the Court to exclude evidence and argument regarding AEC's total cost claim, (Dkt. 113), and its alleged damages for delay, (Dkt. 117).

Under Idaho law, "if parties to a contract have provided the measure of damages to be recoverable for breach of the duties imposed by the contract, they are bound by such provision and liability thereunder is restricted to the terms of the contract." *Idaho State Univ. v. Mitchell*, 552 P.2d 776, 779 (Idaho 1976). And here, the Subcontract does seem to provide a measure of damages recoverable for a breach. For example, Article 29 of the Subcontract states that if Wood terminates the contract at its own convenience, then AEC "shall only be entitled to compensation for Services satisfactorily performed, and shall not be entitled to anticipated profit on Services not performed," including "any other costs, losses, damages, or expenses." (Dkt. 113-3, at 16). Article 10 of the Subcontract also provides that AEC's "sole and exclusive remedy for any and all impact, delay, disruption, hindrance, interference, inefficiencies, damages, or other adverse effects of the delay upon the performance of the Services shall be a time extension to the Period of Performance." (Dkt. 113-3, at 8).

Despite these provisions, however, AEC may be entitled to recover in quantum meruit.  AEC contends, and intends to prove at trial, that Wood wrongfully terminated AEC for default in material breach of the contract.  (Dkt. 160); *see Warner Bros. Int'l Television Distrib. v. Golden Channels & Co*., 2003 WL 27384425, at *20 (C.D. Cal. Mar. 31, 2003) (unpublished) ("Wrongful termination of a contract for default, when no default has in fact occurred, constitutes a breach of contract.").  AEC also contends that Wood knew or had reason to know that AEC made a mistake in its bid on the Project, thereby rendering the Subcontract voidable.  (Dkt. 167); *Belk v. Martin*, 39 P.3d 592, 597 (Idaho 2001) ("A contract containing a unilateral mistake may be rescinded or modified if there has been a misrepresentation or knowledge of the mistake by the other party.").

If either claim is successful, AEC may potentially be entitled to rescind the Subcontract and recover in quantum meruit.  *See, e.g., Sullivan v. Bullock*, 864 P.2d 184, 189–90 (Idaho Ct. App. 1993) ("[I]f a contractor is prevented by the owner from completing a contract, the contractor may recover his lost profits on the whole contract, in a suit on the contract, or for what has been finished, in quantum meruit." (citing 13 Am.Jur.2d Building and Construction Contracts § 78 (1964))); *Sulzer Bingham Pumps, Inc. v. Lockheed Missiles & Space Co*., 947 F.2d 1362, 1366 (9th Cir. 1991) (finding that a subcontractor was entitled to equitable

relief when the prime contractor knowingly accepted an unconscionably low bid). In that case, evidence of AEC's actual costs and delay damages could be relevant in determining the amount AEC can recover in quantum meruit. This evidence currently is not "clearly inadmissible for any purpose," *United States v. Babichenko*, 2021 WL 2371565, at *2 (D. Idaho June 9, 2021), and, therefore, the Court denies both motions without prejudice to re-raise the issues at trial, if necessary. (Dkts. 113, 117).

### 5. Wood Sureties Motion to Exclude Evidence of the Wood Bond

The Wood Sureties move the Court to exclude evidence and argument regarding the Wood Bond, arguing that the probative value of the bond may be outweighed by the prejudice to the Wood Sureties. (Dkt. 132); *see also* Fed. R. Evid. 411 ("Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully."). The existence of the bond, however, is a requirement for AEC and Mountain Utilities' Miller Act claims. *See* 40 U.S.C. § 3133(b)(1).

Therefore, mindful of the potential prejudicial effect of the Wood Bond, the Court orders the parties to enter a set of stipulated facts into the record as to: (1) the existence of the bond (including the bond number); (2) the bonding companies who are obligated on the bond; (3) the penal amount of the bond; and (4) the fact that Mountain Utilities and AEC timely submitted notice and timely brought their

claims.  The Court also orders the same stipulations be entered for the AEC Bond.

Any other evidence or argument regarding either bond will be precluded, but

without prejudice to a motion to reconsider should circumstances at trial justify

such a motion.  (Dkt. 132).

## II.    Rule 702 Motions

Wood, AEC, and Travelers all move to exclude the testimony of each expert

tendered in this case.  (Dkts. 82–85, 87, 88).  The standard for evaluating the

admissibility of expert witness testimony was established in *Daubert v. Merrell*

*Dow Pharms., Inc.*, 509 U.S. 579 (1993), and its progeny, and is now set forth in

Rule 702 of the Federal Rules of Evidence.[2]  Under *Daubert*, "a district court's

inquiry into admissibility is a flexible one."  *City of Pomona v. SQM N. Am. Corp.*,

750 F.3d 1036, 1043 (9th Cir. 2014).  "In evaluating proffered expert testimony,

the trial court is 'a gatekeeper, not a fact finder.'"  *Id.* (quoting *Primiano v. Cook*,

598 F.3d 558, 565 (9th Cir. 2010)).  The Court's task is to "assure that the expert

---

[2]      Rule 702 provides that expert opinion evidence is admissible if:  (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied the relevant principles and methods to the facts of the case.  Fed. R. Evid. 702; *see also City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014). The proponent of the testimony bears the burden of establishing admissibility. *Daubert*, 509 U.S. at 592 n.10 (citing *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987)).

testimony 'both rests on a reliable foundation and is relevant to the task at hand.'"
*Primiano*, 598 F.3d at 564 (quoting *Daubert*, 509 U.S. at 597).  "Expert opinion
testimony is relevant if the knowledge underlying it has a valid connection to the
pertinent inquiry," and "is reliable if the knowledge underlying it has a reliable
basis in the knowledge and experience of the relevant discipline."  *Id.* at 565
(quoting *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006)).

Here, the Court set a deadline of February 28, 2022, for any party to request
a *Daubert* hearing.  No one did.  Nor did any party take any expert depositions.
Instead of deposing the experts or requesting a hearing, Wood, AEC and Travelers
are seeking to employ Rule 702 motions to exclude every expert witness on
*Daubert* grounds in disregard of the dates set for effective management of this
complicated civil case.

Having read all the expert reports, the briefing, and being mindful of the
requirement that expert testimony be relevant and reliable, the Court does not
believe any expert in this case should be excluded on *Daubert* grounds.  (Dkts. 82–
85, 87, 88).  The Court finds that each expert designated in this case qualifies as an
expert in his respective field and offers opinions that would normally assist the
finders of fact in construction litigation.  Each expert opinion appears to be based
on sufficient facts and data, and the reports clearly identify the materials relied
upon in formulating opinions.  The Court further finds that the reports apply

reliable principles and methods, which the experts reasonably applied to the relevant facts. Each report identifies the methods of analysis applied, discusses the facts forming the bases for the analysis, and sufficiently explains the reasons for the conclusions. The reasonings explaining the expert reports are adequate to logically connect the facts and data relied upon to the conclusions reached.

While the parties disagree over the conclusions that the experts reach, the Supreme Court has instructed that a court's analysis must focus "solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id*. at 596. The Court therefore tentatively finds each expert opinion relevant and reliable, subject to cross-examination to expose underlying weaknesses in the application of standard methodology to the facts of this case.

The Court will, however, in reliance on the Federal Rules of Evidence and Ninth Circuit caselaw, limit the experts from testifying on certain impermissible issues. "[A]n expert may not state his or her opinion as to legal standards, nor may he or she state legal conclusions drawn by applying the law to the facts." *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 835 (C.D. Cal. 2010); *Nationwide Transp. Fin.*, 523 F.3d at 1058 ("[I]nstructing the jury as to the applicable law is the

distinct and exclusive province of the court."). For example, "expert testimony regarding the interpretation of a contract is an ultimate question of law upon which the opinion of an expert may not be given." *Hornish v. King Cnty.*, 182 F. Supp. 3d 1124, 1133 (W.D. Wash. 2016) (simplified). The Court therefore will restrict the experts from testifying at trial on issues of contract interpretations and ultimate legal conclusions as to who breached a particular contract obligation. This remains the job for the Court and jury to decide.

## III.   AEC and Travelers' Motion for Rule 37 Sanctions

AEC and Travelers move the Court to sanction Wood for its late production of 76,757 documents three months after the close of discovery—i.e., Production 9. (Dkt. 90). Wood claims that sanctions are not justified here because the late production of Production 9 documents was inadvertently caused by its eDiscovery vendor mistakenly flagging 98,595 documents as duplicates subject to removal. (Dkt. 170 at 4).

Rule 37(b) provides the court with a wide range of sanctions for a party's failure to comply with the Court's discovery orders, including among other things, dismissal of a complaint, entry of default judgment, and awards of fees and costs. Fed. R. Civ. P. 37. "Rule 37(b) sanctions may serve either remedial and compensatory purposes or punitive and deterrent purposes," but ultimately, "[t]he imposition and selection of particular sanctions are matters left to the sound

discretion of the trial court." *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 783–84 (9th Cir. 1983).  Bearing in mind these goals of Rule 37 sanctions, and endeavoring to sculpt sanctions that are reasonable, fair, and just under the circumstances, the Court finds as follows.

Wood violated the Court's November 9, 2020, Amended Scheduling Order (Dkt. 56) setting a deadline of April 15, 2021, for completion of fact discovery when it produced 76,757 documents on September 2, 2021, over four months after the discovery deadline had passed.  But the Court was not made aware of Wood's discovery violation until half a year later, when AEC and Travelers filed this motion for Rule 37 sanctions on March 4, 2022.  (Dkt. 90).  This motion was also filed nearly five months after the Court had held a preliminary status conference on Friday, October 8, 2021, at which neither AEC nor Travelers brought Production 9 concerns to the Court's attention.

AEC and Travelers delay in bringing Production 9 to the Court's attention is problematic, as Rule 37 contemplates an iterative process of progressive discipline for discovery abuses and the Ninth Circuit has taken a dim view of imposing harsh sanctions, such as entry of default judgments or severally handicapping the offending party, without first providing fair notice and a warning that failure to comply with discovery obligations may result in such severe sanctions.  *See In re Rubin*, 769 F.2d 611, 615–19 (9th Cir. 1985).

In this case, the Court was never given the opportunity to provide notice and warning to Wood about its discovery violations.  The parties did not even meet and confer or pursue informal mediation to resolve any differences as required by Fed. R. Civ. P. 37 (a)(1), Idaho Local Rule 37.1, and this Court's February 6, 2020, Scheduling Order.  Instead of addressing this discovery issue in a timely fashion, AEC and Travelers seized on the court's deadline for filing motions in limine as an excuse to raise challenges that should have been raised months ago by way of motions to compel discovery, seek sanctions, or to file pretrial partial summary judgment motions.  For these reasons, the Court will not enter default against Wood, nor strike Wood's claims and defenses, and it will not preclude Wood from admitting documents produced in Production 9 at trial.  Instead, all parties will be permitted to use Production 9 documents in their case in chief and on cross-examination.

That said, Wood's violation of the Court's November 9, 2020, Amended Scheduling Order (Dkt. 56), severely prejudiced AEC and Travelers and creates a severe obstacle in litigating this case in a reasonable manner in which all parties and the Court must maneuver "to secure the just, speedy, and inexpensive determination" of this case.  Fed. R. Civ. P. 1.  Because Production 9 occurred after AEC and Travelers had completed affirmative expert reports and after all depositions had been taken, AEC and Travelers were prevented from using the

Production 9 documents to support their claims and rebut Wood's claims, and were deprived of the ability to depose Wood's representatives and obtain binding testimony on key disputed issues based on internal Wood communications in Production 9.  The Court therefore finds that sanctions are warranted to avoid the prejudice caused to AEC and Travelers by Wood's non-compliance with its timely discovery obligations.

First, the Court will permit AEC and Travelers' experts to testify to facts and opinions beyond the scope of their expert reports, so long as it relates to new information contained within a Production 9 document or evidence adduced at trial.  *See Nationwide Transp. Fin.*, 523 F.3d at 1062.  Neither AEC nor Travelers' witnesses must supplement their export reports or disclose the content of the expert's opinions to Wood prior to trial.  Wood's witness, however, will be restricted to testifying only to those facts and opinions already contained within its reports.  *See supra*, Part I.C.2.

Second, the Court will impose economic sanctions on Wood for its discovery violation.  Rule 37(b) authorizes a court to grant reasonable expenses, including attorneys' fees, caused by a party's failure to comply with a discovery order, "unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C); *see also* F*alstaff Brewing Corp.*, 702 F.2d at 784.

Here, the Court finds that Wood's late production of Production 9 documents was not substantially justified. Although Wood states that Production 9 was inadvertently caused by its eDiscovery vendor mistakenly flagging 98,595 documents as duplicates subject to removal, (Dkt. 170 at 4), the discovery deadlines in this case were twice extended and Wood had more than ample time to discover the error and produce all responsive and relevant documents before April 15, 2021. Moreover, the Court does not find that under these circumstances an award of expenses would be unjust. The sheer volume of documents in Production 9 doubled what had been produced through discovery to that date. Reviewing more than 275,000 pages likely took AEC's attorneys a significant amount of time. Given the extraneous burden placed on AEC and Travelers to review the voluminous production, the Court finds that awarding their additional reasonable attorneys' fees and costs is an appropriate recompense.

Accordingly, the Court now orders Wood to pay as a sanction for its violation of the Court's order the attorneys' fees and costs that AEC and Travelers reasonably incurred in reviewing the Production 9 documents. Idaho Civil Local Rule 54.2 requires a party seeking attorneys' fees and costs to file an affidavit itemizing the expenses incurred and justifying any attorney fee hourly rate that is claimed. The Court therefore orders AEC and Travelers to file within thirty (30) days of entry of this order affidavits complying with the requirements of Local

Rule 54.2 related to additional costs incurred in reviewing the Production 9

documents.  After reviewing the declarations and supporting documentation, the

Court will determine a reasonable amount of attorneys' fees and costs to award.

(Dkt. 90).

## ORDER

**IT IS HEREBY ORDERED:**

1.  Mountain Utilities' Motion to Exclude Evidence Regarding Defenses to

    Payment Under the Sub-Subcontract, (Dkt. 100), is **GRANTED** in part and

    **DENIED** in part without prejudice to re-raise the issues at trial once

    evidence has been offered.

2.  AEC and Travelers' Joint Motion to Preclude Evidence Regarding the

    Subcontract and Bond, (Dkt 96), is **DENIED**.

3.   AEC and Travelers' Joint Omnibus Motion to Exclude Evidence, (Dkt.

    107), is **GRANTED** in part and **DENIED** in part.

    a.  Motion 1 is **GRANTED**.

    b.  Motion 2 is **GRANTED** in part and **DENIED** in part without

        prejudice to re-raise at trial once evidence has been offered.

    c.  Motion 3 is **DENIED**.

    d.  Motion 4 is **DENIED**.

e.  Motion 5 is **GRANTED** in part.

4.  AEC and Travelers' Joint Motion to Preclude Wood from Offering Testimony Contradicting Prior Testimony from its Rule 30(b)(6) Depositions, (Dkt. 112), is **DENIED**.

5.  Travelers' Motion to Exclude Evidence re Damages in Excess of Penal Sum of Bond, (Dkt. 108), is **DENIED**.

6.  Travelers' Motion to Preclude Wood from Referring to Travelers as Insurance Company at Trial, (Dkt. 109), is **GRANTED**.

7.  Travelers' Motion to Preclude Argument Surety is Liable for Damages Related to Changes in Contract, (Dkt. 110), is **DENIED**.

8.  Wood and the Wood Sureties' Joint Motion to Exclude Evidence of Attorneys' Fees Under the Miller Act Claims, (Dkt. 114), is **DENIED** without prejudice to re-raise at trial, if necessary.

9.  Wood and the Wood Sureties' Joint Motion to Exclude Delay Damages by Mountain Utilities (Dkt. 115) is **DENIED**.

10. Wood and the Wood Sureties' Joint Motion to Exclude Evidence of Language Stricken from Contract, (Dkt. 116), is **DENIED**.

11. Wood and the Wood Sureties' Joint Motion to Exclude AEC's Total Cost

Claim, (Dkt. 113), is **DENIED** without prejudice to re-raise at trial once evidence has been offered.

12. Wood and the Wood Sureties' Joint Motion to Exclude Delay Damages by AEC, (Dkt. 117), is **DENIED** without prejudice to re-raise at trial once evidence has been offered.

13. The Wood Sureties' Motion to Exclude All Evidence Regarding Wood's Bond, (Dkt. 132), is **GRANTED** in part and **DENIED** in part.  The parties must enter a set of stipulated facts into the record as to:  (1) the existence of the Wood Bond and AEC Bond (including the bond numbers); (2) the bonding companies who are obligated on the bonds; (3) the penal amount of the bonds; and (4) the fact that each party timely submitted notice and timely brought their claims.

14. Wood's Motion to Exclude Expert Testimony of the Xpera Group, (Dkt. 82), is **DENIED**.

15. Wood's Motion to Exclude Expert Testimony of the Sutor Group, (Dkt. 83), is **DENIED**.

16. Wood's Motion to Exclude Expert Testimony of Schnabel Engineering, (Dkt. 84), is **DENIED**.

17. Wood's Motion to Exclude Expert Testimony of The Vertex Companies, (Dkt. 85), is **DENIED**.

18. AEC and Travelers' Motion to Exclude Expert Testimony by Synergen Consulting International, LLC, (Dkts. 87, 88), is **DENIED**.

19. AEC and Travelers' Motion for Sanctions Per FRCP 37, (Dkt. 90), is **GRANTED** in part and **DENIED** in part.  AEC and Travelers are ordered to file in compliance with Rule 54.2 itemized declarations explaining their fees and expenses related to reviewing Production 9 documents within thirty (30) days of the entry of this Memorandum Decision and Order.

**IT IS SO ORDERED.**

DATED: May 16, 2022

*Richard C. Tallman*

Richard C. Tallman
United States Circuit Judge